IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LISA M. HICE, as Co-Administrator of the Estate of Marvin G. May, Deceased; and LEANN N. HOFF, as Co-Administrator of the Estate of Marvin G. May, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>TURN KEY HEALTH CLINICS, LLC, TAMARA CAREY, APRN, STACIA UNRUH, LPN, CUSTER COUNTY SHERIFF, in his Official Capacity, and JULIE WARNKE<br><br>Defendants. | Case No. 24-CV-119-JD |

### DEFENDANT TURN KEY HEALTH CLINICS, LLC REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Defendant Turn Key Health Clinics, LLC ("Defendant" or "Turn Key"), pursuant to LCvR7.1(i), provides the following Reply to Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss [Doc. 14].

### ARGUMENT & AUTHORITIES

**A. Plaintiffs have failed to allege facts sufficient to show an underlying Constitutional Deprivation.**

Without an underlying deprivation of Decedent's constitutional rights, Plaintiffs § 1983 claim fails. *Crowson v. Wash. Cty. State of Utah*, 983 F.3d 1166, 1186 (10th Cir. 2020). Despite appearing to provide authority in the Response, a

distinction can be drawn from all the cases Plaintiffs cite. Plaintiffs begin their Response by citing to inapplicable and non-controlling case law in an attempt to obfuscate the applicable standard. *See* Doc. 30, p. 11. Specifically, Plaintiffs cite to two cases which discuss the standards potentially applicable to *prison jailers/correctional officers* in their duty of providing "reasonable safety from serious bodily harm," typically assaults, which is separate and distinct from a *correctional health care providers* duty to provide "adequate medical care" under the Eighth/Fourteenth Amendment. *Tafoya v. Salazar*, 516 F.3d 912 (10th Cir. 2008)(claim of deliberate indifference for failure to protect from sexual assault); *Lopez v. LeMaster*, 172 F.3d 756 (10th Cir. 1999)(deliberate indifference claim for failure to protect from physical assault and medical needs thereafter). From the *Lopez* case, Plaintiffs even cite directly from the section of the Opinion entitled "Liability for Failure to Protect." *Lopez*, 172 F.3d at 759. The claim of deliberate indifference as to medical needs however, is deliberate indifference to a substantial risk of serious harm. *Lopez*, 172 F.3d at 764 (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

Despite what Plaintiffs would like this Court to believe, the applicable standard continues to require a showing of "unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind" which is a high evidentiary hurdle. *Estelle*, 429 U.S. at 105-06; *Farmer v. Brennan*, 511 U.S. 825, 826 (1994); *Self v. Crum*, 439 F.3d 1227,1232 (10th Cir. 2006). It is not reasonableness or even negligence. *Estelle*, 429 U.S. at 104-106; *Duffield v. Jackson*, 545 F.3d 1234, 1239(10th Cir. 2008). With

regard to the subjective component of deliberate indifference, the Supreme Court has straightforwardly set forth, there must be a "sufficiently culpable state of mind," and an individual cannot be liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006)(citing *Farmer*, 511 U.S. 825, 834, 837 (1994)).

With these requirements in mind, the Tenth Circuit set forth two types of conduct which **may** constitute deliberate indifference involving medical treatment in a prison: (1) a complete denial or unnecessary delay in a referral; (2) a complete denial or failure to treat. *Self*, 439 F.3d at 1231-32, (10th Cir. 2006)(quoting *Sealock v. Colorado*, 218 F.3d 1205 (10th Cir. 2000)(emphasis added); *Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005). The Court further clarified a claim under this framework is only actionable where the need for additional treatment or referral to a medical specialist is obvious and the provider responds to an obvious risk with treatment that is patently unreasonable. *Id.* Where a medical professional provides a level of care consistent with the symptoms presented by the inmate, an inference of deliberate indifference is unwarranted, and the requisite state of mind cannot be met. *Id*. Specifically, absent an extraordinary degree of neglect, the subjective component is not satisfied where a provider merely exercises his considered medical judgment as to such decisions as "whether to consult a specialist or undertake additional medical testing." *Id.*; *see also Estelle*, 429 U.S. at 107 (holding the Eighth Amendment's

prohibition on cruel and unusual punishment is not violated when a doctor simply resolves the question whether additional diagnostic techniques or forms of treatment is indicated); *see also Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992). For example, in applying these principles, Courts have allowed a claim of deliberate indifference where a provider knew an inmate was suffering from severe chest pains yet "completely refused to assess or diagnose" the potential cardiac emergency but denied a claim where a provider set forth "a good faith effort to diagnose and treat [the inmate's] medical condition" despite failing to diagnose a heart attack. *Mata*, 427 F.3d at 755-61. This is the line between negligence and deliberate indifference – there must be complete denials/failures to provide care or unnecessary delays to place a referral to meet the high constitutional threshold, not "mere differences" in opinion over the adequacy of medical treatment. *Oxendine v. Kaplan*, 241 F.3d 1272, 1277 (10th Cir. 2001). This distinguishable line is set forth in the very case cited by Plaintiffs, *Prince*, where zero care was provided and zero referrals were placed for the inmate, which is not comparable to the case at hand. *Prince v. Sheriff of Carter Cty.*, 28 F.4th 1033 (10th Cir. 2022).

In order to attempt to state a cognizable claim upon this foundation, Plaintiffs spend 1/3 of their Response re-alleging, verbatim, the allegations from the Complaint. *See* Doc. 30, pp. 1-7. Plaintiffs then repeatedly contradict themselves in an attempt to formulate a fact pattern that would support an underlying constitutional deprivation. Firstly, Plaintiffs state that they "clearly do allege that Nurse Unruh *completely denied care, and failed in her gatekeeper role*, despite the obviousness of Mr. May's dire

condition." Doc. 30, p. 15 (emphasis added). However, in the sentences before Plaintiffs state Nurse Unruh was observing and documenting Mr. May's refusal to eat, blood pressure, weight loss, and Alzheimer's. *See* Doc. 30, p. 14. Further, as shown by Plaintiffs, Nurse Unruh in her gatekeeper role had Mr. May seen by a higher level of care, an APRN. *See* Doc. 30, p. 14. Plaintiffs Complaint and Response detail that Mr. May was under the continuous care of the medical providers and being seen regularly by medical staff. *See* e.g., Doc. 1, ¶¶ 18, 26-27, 32. Secondly, Plaintiffs state that "with respect to APRN Carey, scheduling a man, in emergent need of treatment, for a 90-day follow-up appointment is not "care."" However, in the previous sentences they list APRN Carey's detailed observation and care of Mr. May through her telemedicine visit on February 3, 2022. Telemedicine is a proper means to see patients in the State of Oklahoma. *See* 59 O.S. § 478. The allegations in the Complaint simply do not show any extraordinary degree of neglect that would arise to a level of deliberate indifference. Rather, the Complaint takes issue with the type of care that was provided, but such claims only rise, at best, to a claim of medical negligence. "A difference in medical opinion regarding treatment does not amount to a constitutional violation. Moreover, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Lamar v. Boyd*, 508 Fed. Appx. 711, 714 (10th Cir. 2013) (internal citations and quotations omitted for clarity).

Though there is no right to be seen by someone with a higher level of training,

Mr. May was seen by a higher level of care, and appropriately scheduled a follow up visit for Mr. May. Plaintiffs' own allegations demonstrate APRN Carey did not consciously disregard Mr. May or respond to an obvious risk with treatment that is patently unreasonable. *Self*, 439 F.3d at 1232-33; *Mata v. Saiz, 427 F.3d 745, 755 (10th Cir. 2005)*. Plaintiffs admit Mr. May's health was monitored and supervised by medical providers throughout his incarceration at CCJ. Including monitoring and documenting his refusal to eat, refusal of medications, pulse, and blood pressure throughout his incarceration. *See* Doc. 1 at ¶¶ 26-27, 32. Plaintiffs' allegations, which must be taken as true, show Mr. May was receiving a consistent course of medical care and treatment during his detainment at CCJ.

Thirdly, Plaintiffs go on to state that "Carey did nothing more than schedule him for a follow-up appointment in 90 days. Of course, in his obviously dire state, Mr. May did not live to see that follow-up appointment. Based on the obvious risks, APRN Carey should have sent Mr. May to the emergency room or at least scheduled him for an urgent evaluation by a physician." *See* Doc. 30, pp. 16-17. Plaintiffs' argument has a factual and temporal disconnect between the telemedicine visit in February and Mr. May's death from COVID-19 in March. Plaintiffs continue to obfuscate the serious risk of harm – death, by continuously listing Plaintiffs' comorbidities, though Plaintiffs, admit APRN Carey and other providers were aware of such and continuously monitored. Plaintiffs argue that the evidence shows that it was obvious that Mr. May was ill, so APRN Carey or Nurse Unruh must have seen that he was ill and consciously disregarded his need for medical care. However, to show an

6

underlying constitutional deprivation, Plaintiffs are required to show that APRN Carey or Nurse Unruh appreciated that Mr. May "had a risk of a fatal medical condition, i.e. COVID-19 and chose to disregard" that risk. As the Court is well aware, the risk claimed by Plaintiffs must be the same that medical providers disregarded. *See Bruner-McMahon v. Jameson*, 566 Fed. Appx. 628, 633 (10th Cir. 2014). Therefore, to the extent Plaintiffs allege that APRN Carey or Nurse Unruh were deliberately indifferent to Mr. May's needs regarding his COVID-19, there are no allegations to support such a claim. Plaintiffs do not allege there were any symptoms related to Mr. May's COVID-19, or that APRN Carey or Nurse Unruh ignored such symptoms. Plaintiffs must allege that APRN Carey or Nurse Unruh subjectively disregarded the risk of Mr. May's claimed harm – death and COVID-19—and not merely the risks of other comorbidities. Plaintiffs have failed to do so. Therefore, the case law is clear that without an underlying constitutional deprivation, there cannot be an actionable claim against Turn Key pursuant to the *Monell* theory of liability or under the limited *Garcia/Crowson* exception. Taking Plaintiffs allegations as true, their §1983 claim cannot overcome the instant motion and should be dismissed.

**B. Plaintiffs have failed to state a constitutional claim against Defendant Turn Key based on a Municipal Liability theory under either *Monell* or *Crowson*.**

As outlined above without an underlying deprivation, Plaintiffs cannot state an actionable § 1983 claim against Defendant. However, even if Plaintiffs did plausibly plead an underlying constitutional deprivation, Plaintiffs have failed to establish Turn

Key is liable through the application of either the traditional *Monell* pattern of proof or the limited *Crowson* exception of municipal theory of liability. Firstly, regarding the *Crowson* exception, Plaintiffs' failure to directly respond to Defendant's arguments, such have been conceded by Plaintiffs – the *Crowson* exception is inapplicable to the specific claims set forth by Plaintiffs.

Secondly, under *Monell* "to establish municipal liability, a plaintiff must show (1) the existence of a municipal policy or custom, and (2) that there is a direct causal link between the policy or custom and the injury alleged." *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691-92 (1978); *Bryson v. Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010). Plaintiffs discuss 16 cases regarding Turn Key; however, none of these cases involved inmates who were incarcerated at Custer County Jail. Of the 16, only 3 involve COVID-19. Plaintiffs do not allege that a single one of these 3 cases regarding COVID-19 concerned a failure to test for COVID-19 or that it resulted in a finding, whether by judge or jury, that such an alleged custom existed and was in violation of the Constitution. Plaintiffs have failed to establish a certain municipal policy or custom was the direct causal link that caused any alleged constitutional deprivation to Mr. May or that Turn Key maintained the requisite final decision-making authority over any policies or practices at Custer County Jail.

Plaintiffs' unsubstantiated claim of municipal liability based on a *Monell* theory of liability is based only upon bald, conclusory allegations with no factual support alleged, which are insufficient as a matter of law to support Plaintiffs' claim. Thus, Plaintiffs have failed to state a claim for municipal liability under § 1983 against Turn

Key and, pursuant to Rule 12(b)(6), Plaintiffs' claims against Turn Key must be dismissed.

> **C. Defendants are immune from Plaintiffs' state law tort claims under the Oklahoma Governmental Tort Claims Act ("GTCA").**

As it relates to Plaintiffs' state law claims, Plaintiffs failed to directly respond to Defendant's arguments regarding this Courts exercise of supplemental jurisdiction, such have been conceded. Therefore, if this Court properly grants Defendant's Motion with respect to Plaintiffs' federal cause of action, this Court should decline to exercise supplemental jurisdiction.

Secondly, Plaintiffs' state law tort claims must fail because Turn Key is entitled to immunity under the GTCA. In their Response, Plaintiffs argue Defendants are not entitled to such immunity despite the pronunciation by the Oklahoma Supreme Court in *Barrios v. Haskell Cnty. Pub. Facilities Auth*, 2018 OK 90, 432 P.3d 233. However, there is plain language from the Oklahoma Supreme Court, that supports a finding that Defendant Turn Key is considered an "employee" and is entitled to tort immunity. Okla. Stat. tit. 51, § 152(7)(b)(7). The GTCA provides in pertinent portion that an "employee" includes "licensed medical professionals under contract with the city, county, or state entities who provide medical care to inmates or detainees in the custody or control of law enforcement agencies." *Id*. Plaintiffs admit in their Complaint that Turn Key was under contract with CCJ to provide medical care and treatment to the inmates and pretrial detainees at the time of the events at issue. *See* Doc. 1, ¶¶ 40-47. The Oklahoma Supreme Court, in *Barrios*, correctly included

correctional health care contractors and its employees under the immunity provided to employees of the state. *Barrios*, 2018 OK 90, 432 P.3d 233. Such inclusion is fitting, as an entity can only act through its employees, and where such employees are entitled to tort immunity, so too should the employer entity be entitled to immunity. In their Response, Plaintiffs entirely fail to acknowledge or otherwise attempt to reconcile the vast number of Courts, including the Oklahoma Court of Civil Appeals ("COCA") who have specifically pronounced and recently reaffirmed correctional health care contractors and its employees, such as Turn Key are classified as "employees" under the GTCA and, therefore, protected by its provisions. It is clear that the Oklahoma Supreme Court, which was recently reaffirmed by COCA, along with the United States District Courts for the Western District and the Northern District, have explicitly extended immunity from liability for tort claims to a jail's health care contractor. It would be unjust to require Defendants to defend claims from which the Supreme Court of Oklahoma has already decided, and COCA has recently reaffirmed, Defendants are immune. *See Martin v. Armor Corr. Health Serv's,* Inc., Case No. 120, 422, p. 8-10 (OK CIV APP Feb. 27, 2024).

      WHEREFORE, Defendants Turn Key Health Clinics, LLC prays this Court grant this Motion and dismiss this action in its entirety pursuant to Rule 12(b)(6).

      Respectfully submitted,

      *s/ Vanessa O. Martínez*
      Sean P. Snider, OBA# 22307

Anthony C. Winter, OBA# 32148  
Vanessa O. Martínez, OBA# 34165  
JOHNSON HANAN VOSLER  
HAWTHORNE & SNIDER  
9801 N. Broadway Extension  
Oklahoma City, OK 73114  
Telephone: 405.232.6100  
Facsimile: 405.232.6105  
ssnider@johnsonhanan.com  
awinter@johnsonhanan.com  
vmartinez@johnsonhanan.com  
*Attorneys for Defendants Turn Key Health Clinics, LLC; Tamara Carey, APRN; and Stacia Unruh, LPN*

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of May, 2024, I electronically transmitted the attached document to the Clerk of Court using the ECF System. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

*/s/ Vanessa O. Martínez*