# CUSTER COUNTY, OKLAHOMA

CONTRACT FOR

MEDICAL STAFFING AND ADMINISTRATION

FOR THE

CUSTER COUNTY JAIL

2021

For

CUSTER COUNTY SHERIFF'S OFFICE
**DAN DAY, SHERIFF**
300 N. 7th Ave.
Arapaho, OK 73620
(580) 323-1616

DEFENDANT'S EXHIBIT
1
5:24-cv-00119-JD

This Contract is entered into between the Board of County Commissioners of Custer County, Oklahoma and the Custer County Sheriff's Office ("Agency") and Turn Key Health Clinics, LLC ("Contractor"). The purpose of this Contract is to contract for limited Medical Staffing and Medical Administration at the Custer County Jail in Arapaho, Oklahoma 73620 (herein called the "Facility") under the terms and conditions detailed in the Contract.

## I. DUTIES AND RESPONSIBILITIES OF THE CONTRACTOR

### 1.1 SCOPE OF CONTRACT
Contractor shall be a supplier and/or coordinator of health care at the Facility. Contractor shall be responsible for medical care for inmates within the Facility, up to the limits described in this Contract. Access to the Contractor's medical services for an inmate as described in this Contract commences with the commitment of the inmate to the custody of the Facility and ends with the release of the inmate.

### 1.2 INSURANCE
The Contractor will carry an acceptable form of professional liability insurance in minimum amounts of One Million Dollars ($1,000,000.00) per occurrence and Three Million Dollars ($3,000,000.00) in the aggregate annually during the entire term and any renewal term of this Contract.

### 1.3 COMPLIANCE WITH APPLICABLE LAW
To the extent of services are defined by this Contract, the Contractor will comply with the standards set forth by the Oklahoma Department of Health for the duration of the term of this Agreement with the Agency.

### 1.4 CONTRACTOR COOPERATION
All Contractor personnel, including the personnel of its subcontractor and agents, will be subject to security background checks and clearances by the Agency. In each instance, the individual and the Contractor will provide such cooperation as may be reasonably required to complete the security check. The Agency agrees to perform such security checks in a timely manner and not unduly delay such checks.

### 1.5 CONTAMINATED WASTE
The Agency shall be responsible for the disposal of all general waste, including infectious or hazardous waste. The material must be removed from the Facility and disposed of as regulated by federal, state and local laws.

### 1.6 PHARMACEUTICAL
The Contractor shall provide for pharmaceutical management services to assure the availability of prescribed medications within a reasonable time period of the order of issue being written except where such medications are not readily available in the local community. In order to facilitate the timely administration of medications, the Agency agrees to allow the use of an inmate's home medication, as appropriate, upon the verification of the medication by Contractor personnel.

The Contractor shall provide a method for the recording of the administration of medications by Agency and/or Contractor personnel on a pre-approved form that includes documentation of the fact that inmates are receiving and ingesting their prescribed medications. Medication administration and medication

documentation training shall be made available for Agency staff, upon request, for times when Contractor personnel are not at the Facility to administer medications.

The Contractor will negotiate discounted rates with a pharmacy licensed in the State of Oklahoma. The Contractor will be responsible to pay the costs of all pharmaceutical as required by current applicable law with the exception of "specific medications", and subject to the Maximum Liability provision listed below in Subsection 1.8. For the purpose of this agreement, "specific medications" shall be defined as any court-ordered medications, medication related to the treatment of HIV/AIDS related to diseases, hemophilia, hepatitis, cystic fibrosis, multiple sclerosis, cancer, active tuberculosis, medications for juveniles, as well as medications listed as biological and/or anti-rejection drugs.

1.7 INMATE MEDICAL FEE FOR SERVICE SYSTEM

The Contractor may obtain an inmate fee for medical services authorization slip from each inmate medical encounter as directed by the Agency. Any inmate charges will be established by the Agency in accordance with Oklahoma State Statutes. Fees for services may be collected directly by the Agency and will be utilized by the Agency. The Contractor will not collect any of the fees from the inmates.

1.8 MAXIMUM LIABILITY

All financial liability for offsite, specialty, and pharmaceutical services shall rest upon the Agency, not the Contractor, except as otherwise provided herein.

1.9 IMMUNITY FROM LIABILITY

The Contractor agrees to indemnify and to hold the Agency harmless for, from, and against claims, suits, reasonable attorney's fees, damages, or injuries to persons or property or other liabilities arising out of any sole negligence of the Contractor or the Contractor's personnel to properly provide medical care pursuant to the terms of this Contract.

Indemnification shall not extend to the Agency for any alleged actions, omission of action, neglect, or the prevention of any person from receiving medical care by the Agency and/or any Agency personnel or agents.

The Contractor shall not be responsible for any claims, damages, and/or injuries arising from alleged negligence and/or wrongful acts or omissions on the part of the Agency and/or any Agency personnel or agents, nor shall Contractor be responsible for any claims, damages, and/or injuries arising from alleged failure of the Agency and/or any Agency personnel in promptly and/or accurately presenting a person to the appropriate Contractor's personnel or independent contractors if it should have been reasonably known that the individual was in serious need of medical attention. The Contractor shall not be responsible for the failure of the Agency or Agency personnel or agents to obtain emergency medical care in the event the Contractor personnel is not available to the Facility.

The Agency shall hold harmless and indemnify the Contractor and the Contractor's officers and personnel against any loss or damage, including attorney's fees or other litigation costs, caused or necessitated by the sole negligence of the Agency, Agency employees and agents, and/or other vendors which is related to medical treatment or care.

The terms and provisions of this Section 1.9 shall survive the termination of this Contract.

1.10 PERSONNEL RECORD KEEPING
The Contractor shall, upon request, provide to the Agency proof of licenses and/or certificates for all Contractor professional staff. In addition, Professional Liability Insurance must be in place for all physicians and Nurse Practitioners/Physician Assistants, and other employees or agents of Contractor providing medical services to inmates.

1.11 EMERGENCY ASSISTANCE
While at the facility, the Contractor's personnel shall, in times of emergency or threat thereof, whether accidental, natural or man-made, provide medical assistance to the Facility to the extent or degree required by policies and procedures.

1.12 MEDICAL AND NURSING SERVICES PROVIDED
1. All medical personnel providing services through Contractor under this Contract shall be the employees and/or agents of Contractor and not of the Agency. Such individuals shall hereby be referred to as the "Medical Staffing". All wages, worker's compensation, insurance, benefits, vacations, and claims of any kind relating to the Medical Staffing provided by the Contractor shall be the sole responsibility of Contractor and not of Agency. Medical Staffing associated with the terms of this contract shall not include employees and/or agents of the Agency.

2. Contractor shall provide weekly medical unit coverage, including:

   a. Up to 12 hours a week of on-site nursing services (RN, LPN);
   b. One weekly Physician or midlevel provider (ARNP or PA) patient clinic, conducted either in person or by telemedicine, granted capabilities are made available for such services by the Facility;
   c. A Physician or midlevel provider who will provide 24 hours a day, seven days a week on-call coverage for emergency consultation on an as needed basis.

3. Contractor shall provide a medical review for inmates identified with serious chronic disease or chronic mental health concerns during the Agency intake process within fourteen (14) days after the inmate's arrival at the Facility. The Agency shall be responsible to address any medical or mental health condition timely and in an appropriate manner prior to the medical review by Contractor personnel.

4. Contractor shall provide medication management and procurement. Medication administration shall be the responsibility of Agency personnel; and

5. Contractor shall provide weekly nurse sick call and provider sick call and follow-up. Daily inmate request review, triage and scheduling of clinic shall be the responsibility of Agency staff.

1.13 SATISFACTION WITH HEALTHCARE STAFF
In recognition with the sensitive nature of correction facility operations, if the Sheriff becomes dissatisfied with any member of the Contractor's medical staff, the Sheriff shall provide Contractor written notice of such dissatisfaction and the reasons therefore. Following receipt of such notice, Contractor shall use commercially reasonable efforts to resolve the dissatisfaction. If the problem is not resolved to the

satisfaction of the Sheriff within ten (10) business days following the Contractor's receipt of the notice, Contractor shall remove the individual from providing services at the Facility within a reasonable timeframe considering the affects of such removal on Contractor's ability to deliver healthcare services and recruitment/hiring of an acceptable replacement. The Sheriff reserves the right to revoke the security clearance of any of Contractor's Medical Staffing at any time.

1.14 EMERGENCY, HOSPITALIZATION, SPECIALTY AND OFF-SITE CARE

The Contractor shall only be responsible for determining the appropriateness for emergency care while licensed Contractor personnel are at the facility. Contractor will assist with the arrangement for hospitalization, dental, x-ray, diagnostic laboratory, and/or any other off-site specialty care for inmates who, in the opinion of the Contractor treating provider, require treatment beyond what is normally provided at the Facility. Costs for such services shall be considered off-site medical care and costs associated with care shall be the responsibility of the Agency.

1.15 TESTIFYING IN COURT

Contractor personnel shall be aware that they might, from time to time, be subpoenaed to testify in court or at a deposition regarding medical treatment. Overtime, if any, associated with this obligation is the responsibility of the Contractor. Contractor will keep the Agency informed of any and all requests.

1.16 POLICIES AND PROCEDURES / PROTOCOLS

A written manual of the Agency and Contractor's standardized policies and defined procedures will be available at all times for Contractor personnel. Contractor's nursing protocols shall be devised and approved by a physician licensed in the State of Oklahoma. Policies and procedures and nursing protocols will be reviewed and revised as necessary.

1.17 TRANSPORTATION

The Agency will arrange for inmate transportation for emergency ambulance care. The cost of these services will be considered off-site medical care costs associated with care shall be the responsibility of the Agency. Non-emergent transportation relating to the provision of health services shall also be the responsibility of the Agency.

1.18 NON-INMATE HEALTH SERVICES

When licensed Contractor personnel are at the Facility, non-inmate health services shall be provided in the form of emergency care for Facility staff and visitors for the purpose of stabilizing the condition and arranging for transport. Emergency services include first aid, assessment, stabilization and the coordination of transport of employees or visitors who become ill or injured in the Facility.

1.19 MEDICAL RECORDS REQUIREMENTS

1. A medical record consistent with state regulations and community standards of practice shall be maintained for each inmate held beyond the first appearance in court. These records shall be kept separate from the jail confinement records of the inmate.

2. The Agency's detention medical clerk shall assist the Contractor in maintaining and organizing patient information, files, and medical records.

3. Individual health care records will be initiated and maintained for every inmate regarding medi-

cal, dental, or mental health services received as a result of subsequent to the inmate screening process and for services rendered following the inmate's assignments to a housing area.

4. In any case where medical care is at issue, or in any criminal or civil litigation where the physical or mental condition of an inmate is at issue, the Contractor shall make accessible to the Sheriff such records and, upon request, provide copies. The Contractor additionally acknowledges compliance with and understanding of all applicable HIPAA requirements as they apply to correctional facilities.

5. The Contractor acknowledges and agrees that all records prepared or acquired by the Contractor during performance of services under the Contract are the property of the Custer County Sheriff's Office. The Contractor shall be considered the records custodian during the duration of the Contract. Upon the termination of this Contract, all inmate medical records shall remain in the care and custody of the Agency.

6. Inactive medical records will be maintained by the Agency in accordance with the laws of the State of Oklahoma and the American Medical Association.

6. Any and all legal actions or requests affecting Custer County inmates and/or the Contractor's performance at Custer County must be communicated, in writing, to the Agency within twenty-four hours of the Contractor's receipt.

1.20 INMATES FROM OTHER JURISDICTIONS

The Contractor will provide on-site services for inmates incarcerated at the Facility for the Oklahoma Department of Corrections, Oklahoma municipalities, the U.S. Marshals, the FBOP, and/or other custodial jurisdictions. However, off-site, specialty services, and pharmaceutical costs associated with inmates from other jurisdictions shall not be the responsibility of the Contractor.

1.21 NO POACHING

Agency agrees that, during the Term of this Agreement and for a period of one year from the end of the Term, neither it nor its agents and/or employees will solicit or recruit the services of any of the Contractor's employees or agents, or hire any of the Contractor's employees or agents.

## II. DUTIES OF AGENCY

2.1 REIMBURSEMENT FOR SERVICES

The monthly reimbursement for this initial Seven Thousand, Three Hundred Forty-One Dollars and Forty-One Cents ($7,341.41.00), pro-rated for any partial months and subject to any reconciliation as applicable. The first payment for the month of April 2021 is to be paid to the Contractor by the 1st day of May 2021 for services administered in the month of April. All subsequent payments shall be paid in the full amount by the Agency to the Contractor before or on the 1st day of the month of services rendered.

This Agreement shall cover services provided by the Contractor for the Agency with a facility average daily population (ADP) up to one hundred ten (110) inmates. The ADP will be calculated as the monthly total for all inmates in the jail at 8:00am each day divided by the number of days in that month. Should the ADP exceed 110 inmates for three consecutive months, the Contractor and Agency agree to renego-

tiate the terms of reimbursement for the Contract.

2.2 USE OF FACILITY AND EXISTING MEDICAL AND OFFICE EQUIPMENT
The Agency shall be responsible for providing the non-exclusive use and access to certain office equipment (copier, fax machine, phones, desks, office chairs, etc.), office supplies (chart folders, pens, paper, etc.) durable medical equipment (exam tables, sinks, cabinets, etc.) and phone service required for the administrative operation of the medical unit. However, Contractor will provide a laptop, printer, and equipment for telemedicine. Agency agrees that Contractor will be provided appropriate space in the Facility to perform all required duties and that the Contractor will be allowed use of the current office, medical equipment and supplies currently at the facility at the initiation of services.

In the event additional durable office or medical equipment needs to be purchased, it will be the Agency's responsibility to purchase the required equipment, and it will be owned by the-Agency. The Contractor shall provide and bear the cost of standard disposable medical supplies as needed.

2.3 SECURITY COVERAGE

The Agency and the Contractor acknowledge efficient functioning of the medical program is dependent upon appropriate levels of security staffing. The Agency shall provide adequate security coverage for medical staff operating within the facility to ensure that medical staff are not left alone with inmates and to ensure that medical staff can complete their contracted functions. In the event that the Agency cannot provide adequate security coverage, the Agency shall provide timely notice to the Contractor of the same.

## III. GENERAL TERMS AND CONDITIONS

3.1 ALTERATIONS TO CONTRACT
Any alterations, variations, modifications, or waivers of the provisions of the Contract will be valid only if they are reduced to writing, duly signed by the parties and attached to the original Contract.

3.2 FORCE MAJEURE
Neither party shall be liable in damages or have the right to terminate this Agreement for any delay or default in performing hereunder if such delay or default is caused by conditions beyond its control including, but not limited to Acts of God, Government restrictions (including the denial or cancellation of any export or other necessary license), wars, insurrections and/or any other cause beyond the reasonable control of the party whose performance is affected.

3.3 TERMINATION OF CONTRACT
A. Termination-for Cause

1. If either party fails to fulfill its obligations under the Contract in a timely proper manner, or if either party violates any material covenant, agreement, or stipulation of the Contract, the aggrieved party shall thereupon have the right to terminate the Contract by giving written notice of termination to the other party, which such notice shall be given not less than 60 calendar days prior to the stated effective date of termination. The notice shall specify the effective date of the termination, and the reasons therefore, unless the party to

whom notice is given cures the breach to the satisfaction of the party giving notice prior to the effective date of termination.

2. Notwithstanding the above, the Contractor shall not be relieved of liability to the Agency for damages sustained by the Agency by virtue of any breach of the Contract by the Contractor and the Agency may withhold any payments to the Contractor, in an amount reasonably calculated to equal the estimated damages, for the purpose of setoff until such time as the exact amount of damages to the Agency from the Contractor is determined.

B. Termination for Convenience

The Agency or Contractor may terminate the Contract at any time by giving written notice to the other party of termination, which such notice shall be given not less than 90 calendar days prior to the stated effective date of termination.

C. Payment due to Termination

Upon termination of this Contract for any reason, prior to the end of the then existing term, the Contractor will be paid up to the effective termination date such sums and expenses, prorated as necessary, in accordance with those monthly fees described in paragraph 2.1.

D. Records and Documentation Remain the Property of the Agency

All medical records, Agency policies and procedures, Agency manuals, instructional books, orientation, and continuing education records shall be the property of the Agency and, at the termination of the Contract, remain the property of the Agency without further obligation.

## IV. CONTRACT TERM

Services shall commence on April 3, 2021 and shall continue to June 30, 2021. The Contract shall then be eligible for annual renewals for the County's fiscal year (i.e., July 1 to June 30), subject to a reimbursement for services increase of 2.85% or the Consumer Pricing Index (CPI), whichever is lower. Provided, however, the cost of reimbursement for services shall remain flat through the first fiscal year of services (i.e., July 1, 2021 through June 30, 2022) and shall not be increased upon renewal prior to July 1, 2022.

## V. MISC.

5.1 INDEPENDENT CONTRACTOR STATUS

It is mutually understood and agreed, and it is the intent of the parties hereto that an independent contractor relationship be and is hereby established under the terms and conditions of this Contract. Nothing in this Contract shall be construed to create an agency relationship, an employer/employee relationship, a joint venture relationship, or any other relationship allowing the Agency to exercise control or direction over the manner or methods by which Contractor, its employees, agents or subcontractors perform hereunder, or Contractor to exercise control or direction over the manner or methods by which the Agency and its employees, agents or subcontractors perform hereunder, other than as provided in this Contract.

5.2 SUBCONTRACTING
In order to discharge its obligation hereunder, Contractor may engage certain physicians as independent contractors rather than employees ("Contract Professionals"). Contractor shall not engage any Contract Professionals that do not meet the applicable professional licensing requirements and Contractor shall exercise administrative supervision over such Contract Professionals as necessary to ensure the strict fulfillment of the obligations contained in this Contract. Services provided by Contract Professionals under this Contract shall be provided in a manner reasonably consistent with the independent medical judgment the Contract Professionals are required to exercise.

5.3 PANDEMICS
In the event of a widespread pandemic, the parties acknowledge that the medical personnel coverage provided for herein may need to be adjusted due to heightened screening measures, enhanced safety precautions, and/or staffing shortages resulting from the pandemic. Furthermore, depending on the nature of the pandemic, the parties agree that increased utilization of tele-medicine services, where practicable, may be necessary to reduce the risk of spread to the facility and to maintain sufficient provider and/or nursing staffing levels. The parties agree that any such measures taken in response to a pandemic shall be approved and communicated in writing between the parties and shall not require a formal amendment to this agreement. Any such measures taken in response to a pandemic shall be effective until the resolution of the pandemic or until the parties provide notice in writing that such measures are no longer necessary.

5.4 AGENCY STATUTORY DELEGATION
For purposes of asserting any statutory rights afforded to the Agency or the Facility to pay providers for medical services at certain reduced rates, Agency designates Contractor as its agent to assert such rights and privileges.

5.5 EQUAL EMPLOYMENT OPPORTUNITY
Contractor will not discriminate against any employee or applicant for employment because of race, color, religion, sex, ancestry, national origin, place of birth, marital status, sexual orientation, age or handicap unrelated to a bona fide occupational qualification of the position or because of status as a disabled veteran or Vietnam-Era veteran. Contractor will distribute copies of its commitment not to discriminate to all persons who participate in recruitment, screening, referral and selection of job applicants, and to prospective job applicants.

5.6 WAIVER OF BREACH
The waiver of either party of a breach or violation of any provision of this Contract shall not operate as, or be construed to be, a waiver of any subsequent breach of the same or other provision hereof.

5.7 NOTICES
Any notice of termination, requests, demands or other communications under this Contract shall be in writing and shall be deemed delivered: (a) when delivered in person to a representative the parties listed below: (b) 3 days after mailing when mailed by first-class certified mail, return receipt requested, addressed to the party at the address below; or (c) upon confirmation of receipt if sent by electronic means or facsimile to the parties listed below:

If for Turn Key:
Turn Key Health Clinics, LLC
Attn: Flint Junod, CEO
19 NE 50th Street
Oklahoma City, OK 73105

Telephone: (405) 516-0276

If for Custer County Sheriff's Office:
Custer County Sheriff's Office
Attn: Dan Day, Sheriff
300 North 7th Ave.
Arapaho, OK 73620

Telephone: (580) 323-1616

Either party may change such address or phone number from time to time by providing written notice as provided above.

5.8 GOVERNING LAW
This Contract shall be governed by and construed in accordance with the laws of the State of Oklahoma without regard to the conflicts of laws or rules of any jurisdiction.

5.9 COUNTERPARTS
This Contract may be executed in several counterparts, each of which shall be considered an original and all of which shall constitute but one and the same instrument.

5.10 TITLE OF PARAGRAPHS
Titles of paragraphs are inserted solely for convenience of reference and shall not be deemed to limit, expand or otherwise affect the provisions to which they relate.

5.11 SEVERABILITY
In the event that any one or more provisions of this Contract shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Contract and this Contract shall be construed and enforced as if such invalid, illegal or unenforceable provision had never been contained herein.

5.12 ENTIRE CONTRACT
This Contract constitutes the entire agreement of the parties and is intended as a complete and exclusive statement of the promises, representations, negotiations, discussions and agreements that have been made in connection with the subject matter hereof. This Contract may be amended at any time, but only with the written consent of all parties.

IN WITNESS WHEREOF, the parties have caused this Contract to be executed as their official action by their respective representative, each of whom is duly authorized to execute the same.

**AGREED TO AND ACCEPTED AS STATED ABOVE:**

**TURN KEY HEALTH CLINICS, LLC**

Dated: March 4, 2021 By: ______________________
Flint Junod
Chief Executive Officer

**CUSTER COUNTY SHERIFF'S OFFICE**

Dated: 3-29, 2021 By: ______________________
Dan Day, Sheriff

**BOARD OF COUNTY COMMISSIONERS OF CUSTER COUNTY**

Dated: 3/29, 2021 By: ______________________
County Commissioner

Dated: 3/29, 2021 By: ______________________
County Commissioner

Dated: 3/29, 2021 By: ______________________
County Commissioner

**ATTEST:**

______________________
County Clerk

COUNTY CLERK CUSTER COUNTY, OK

Turn Key HEALTH

900 NW 12th Street
Oklahoma City, OK 73106
(405) 516-0276
www.turnkeyhealthclinics.com

May 28, 2021

Sheriff Dan Day
Custer County Sheriff's Office
300 North 7th Avenue
Arapaho, OK 73620

**RE: 2021-2022 CONTRACTUAL RENEWAL**

Sheriff Day:

As we near the end of the current contract year, we thank you for your continued trust in Turn Key Health Clinics as your inmate health partner. In 2020, we faced unprecedented obstacles due to the COVID-19 pandemic. We are grateful for your commitment to providing quality health care services to inmates and for the adaptability your agency showed in the face of constantly evolving guidance from the Centers for Disease Control and local health agencies.

Like all health care providers, the costs of providing health care services during the pandemic has impacted our operations, including having to face worldwide PPE shortages and a nationwide nursing shortage. Additionally, the CPI for providing health care services has continued to increase at a higher rate than other industries for the past several years. Unfortunately, the care Turn Key provides in correctional facilities is not immune from the impact of this inflation. However, we understand that the County continues to operate on a limited budget. Fortunately, the terms of our contract provide that there will be no rate increase for this contractual year, and the impact of our industry inflation will be absorbed through Turn Key's operational budget as a measure of our continued commitment to your agency. The monthly contract-billing rate beginning July 1, 2021 will remain the same at **$7,341.41.** Should you have any questions at all, please feel free to contact me at your convenience.

As always, Turn Key appreciates your partnership and your continued service to your community.

Sincerely,

Jesse White, CFO
Turn Key Health Clinics
(405) 516-0276

**For Custer County** — Date: 6-4-21

**CUSTER COUNTY SHERIFF'S OFFICE**
**CONTRACT FOR MEDICAL STAFFING AND ADMINISTRATION**
**SECOND AMENDMENT**

This Amendment shall serve as a revision to the Contract for Medical Staffing and Administration (the "Main Agreement") between the **Custer County Sheriff's Office** ("Authority") and **Turn Key Health Clinics, LLC** ("Contractor") for the Custer County Jail.

In consideration to the mutual covenants contained herein, the receipt and sufficiency of which are hereby acknowledged, it is agreed upon as follows:

1. The terms and conditions of this Amendment, as set forth below, shall be effective as of July 1, 2022.

2. Section 1.12(2) of the Main Agreement is deleted in its entirety and replaced in with the following:

   a. Up to 12 hours a week of on-site nursing services (RN, LPN);
   b. One weekly Physician or midlevel provider (ARNP or PA) patient clinic, conducted either in person or by telemedicine, granted capabilities are made available for such services by the Facility;
   c. A Physician or midlevel provider who will provide 24 hours a day, seven days a week on-call coverage for emergency consultation on an as needed basis.
   d. An additional 12 hours a week of on-site nursing services (RN, LPN) to be provided while the Custer County Medical Officer is obtaining certification. These additional services may be terminated with 30 days written notice as provided in Section 5.7. The services in this section will be billed as a separate line item on the invoice for services set forth in Section 2.1.
   e. The additional hours set forth in subparagraph "d" do not alter the responsibilities set forth in paragraphs 3-5 of this Section.

3. Section 2.1 of the Main Agreement is deleted in its entirety and replaced with the following:

   - The monthly reimbursement for this initial Seven Thousand, Five Hundred Fifty Dollars and Sixty-Four Cents ($7,550.64), pro-rated for any partial months and subject to any reconciliation as applicable. The first payment for the month of July 2022 is to be paid to the Contractor by the 1st day of August 2022 for services administered in the month of July. All subsequent payments shall be paid in the full amount by the Agency to the Contractor before or on the 1st day of the month of services rendered.

     The services provided in 1.12(d) will be billed as a separate line item in the monthly amount of Eight Thousand Two Hundred Three Dollars and Twenty-Nine Cents ($8,203.29), subject to the same terms and conditions of the preceding paragraph.

This Agreement shall cover services provided by the Contractor for the Agency with a facility average daily population (ADP) up to one hundred ten (160) inmates. The ADP will be calculated as the monthly total for all inmates in the jail at 8:00am each day divided by the number of days in that month. Should the ADP exceed 160 inmates for three consecutive months, the Contractor and Agency agree to renegotiate the terms of reimbursement for the Contract.

4. In all other respects, the terms and conditions of the Main Agreement shall continue unchanged and remain in full force and effect.

Turn Key Health Clinics, LLC

By: ______________________________
Flint Junod, Chief Executive Officer

Custer County Sheriff's Office

By: ______________________________
Dan Day, Sheriff

For Custer County

By:______________________________

**CUSTER COUNTY SHERIFF'S OFFICE**
**CONTRACT FOR MEDICAL STAFFING AND ADMINISTRATION**
**THIRD AMENDMENT**

This Amendment shall serve as a revision to the Contract for Medical Staffing and Administration (the "Main Agreement") between the **Custer County Sheriff's Office** ("Authority") and **Turn Key Health Clinics, LLC** ("Contractor") for the Custer County Jail.

In consideration to the mutual covenants contained herein, the receipt and sufficiency of which are hereby acknowledged, it is agreed upon as follows:

1. The terms and conditions of this Amendment, as set forth below, shall be effective as of July 1, 2023.

2. The parties hereby acknowledge Section 1.9 of the Main Agreement is deleted in its entirety and shall be replaced with the following:

   1.9 IMMUNITY FROM LIABILITY

   The Contractor agrees to indemnify and to hold the Agency harmless for, from, and against claims, suits, reasonable attorney's fees, damages, or injuries to persons or proper-ty or other liabilities arising out of any sole negligence of the Contractor or the Contractor's personnel to properly provide medical care pursuant to the terms of this Contract.

   Immunity from liability shall not extend to the Agency for the actions, omission of action, neglect, or the prevention of any person from receiving medical care by the Agency or any Agency personnel or agents. Indemnity shall only extend to services provided by the Contractor at the Facility and do not extend to medical, mental health or dental services provided by other entities. Agency has not contracted for mental health care coverage through Contractor thus, all crisis management and mental health evaluations/assessments shall be performed by an independent community mental health provider or community hospital as designated by the Agency, not the Contractor.

   The Contractor shall not be responsible for any claims arising from the negligence on the part of the Agency or any Agency personnel or agents in promptly and/or accurately presenting a person to the appropriate Contractor's personnel or independent contractors if it should have been reasonably known that the individual was in serious need of medical attention. The Contractor shall not be responsible for the failure of the Agency or Agency personnel or agents to obtain emergency medical care in the event the Contractor personnel is not available to the Facility.

   The Agency shall hold harmless and indemnify the Contractor and the Contractor's officers and personnel against any loss or damage, including attorney's fees or other litigation costs, caused or necessitated by the sole negligence of the Agency, Agency

employees and agents, and/or other vendors which is related to medical treatment or care.

The terms and provisions of this Section 1.9 shall survive the termination of this Contract.

3. Section 2.1 of the Main Agreement is deleted in its entirety and replaced with the following:

- The monthly reimbursement for paragraphs (a)-(c) shall be Seven Thousand, Seven Hundred Sixty-Five Dollars and Eighty-Three Cents ($7,765.83), pro-rated for any partial months and subject to any reconciliation as applicable. The first payment for the month of July 2023 is to be paid to the Contractor by the 1st day of August 2023 for services administered in the month of July. All subsequent payments shall be paid in the full amount by the Agency to the Contractor before or on the 1st day of the month of services rendered.

  The services provided in 1.12(d) will be billed as a separate line item in the monthly amount of Eight Thousand Four Hundred Thirty-Seven Dollars and Eight Cents ($8,437.08), subject to the same terms and conditions of the preceding paragraph.

  This Agreement shall cover services provided by the Contractor for the Agency with a facility average daily population (ADP) up to one hundred ten (160) inmates. The ADP will be calculated as the monthly total for all inmates in the jail at 8:00am each day divided by the number of days in that month. Should the ADP exceed 160 inmates for three consecutive months, the Contractor and Agency agree to renegotiate the terms of reimbursement for the Contract.

4. The Parties agree that the Main Agreement will be amended to include the following provision:

**2.4 MEDICATION ADMINISTRATION**

It will be the responsibility of the Agency to conduct medication administration and to generate a sick call list identifying the individuals that are in need of seeing a provider. Agency will provide such list to Contractor prior to each scheduled onsite clinic.

5. In all other respects, the terms and conditions of the Main Agreement shall continue unchanged and remain in full force and effect.

**{SIGNATURE PAGE FOLLOWS}**

Turn Key Health Clinics, LLC

By: ______________________
Flint Junod, Chief Executive Officer

Custer County Sheriff's Office

By: ______________________
Dan Day, Sheriff

For Custer County

By: ______________________