**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **LISA M. HICE,** | ) | |
| **LEANN D. HOFF,** | ) | |
| **as Co-Administrators of the** | ) | |
| **Estate of Marvin G. May,** | ) | |
| **Deceased,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-24-119-JD** |
| | ) | |
| **TURN KEY HEALTH CLINICS,** | ) | |
| **LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**REPORT AND RECOMMENDATION**

Before the Court is Defendant Custer County Sheriff's Motion for Summary Judgment, Doc. 135. Plaintiffs filed a response in opposition, Doc. 155, and the Sheriff replied. Doc. 176. The undersigned issued a Report and Recommendation denying the motion. Doc. 187. Judge Dishman adopted the Report and Recommendation in part and re-referred the matter to the undersigned for further consideration of Plaintiffs' systemic failure, failure to train, and failure to supervise claims. Doc. 200, at 20-29.[1] The undersigned again recommends the Court deny the Sheriff's motion for summary judgment.

---

1 Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

## I. Legal standards.

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is material if under the substantive law it is essential to the proper disposition of the claim." *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016) (internal quotation marks and citation omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020) (explaining that a dispute over a material fact is genuine "if a rational jury could find in favor of the nonmoving party on the evidence presented" (citation omitted)). In applying this standard, the Court "'review[s] the facts and all reasonable inferences those facts support[ ] in the light most favorable to the nonmoving party.'" *Doe*, 952 F.3d at 1189 (second alteration in original) (quoting *Evans v. Sandy City*, 944 F.3d 847, 852 (10th Cir. 2019)). "In reviewing the facts, at summary judgment, the party who bears a burden of proof on an issue bears the burden of production rather than the burden of

persuasion." *Markley v. U.S. Bank Nat'l Ass'n*, 59 F.4th 1072, 1080 (10th Cir. 2023).

## II. Background.

The Court incorporates the factual background as set forth in the prior Report and Recommendation and will not recount it here. Doc. 187.

## III. Failure to train.

Plaintiffs allege that the Sheriff failed to adequately train his employees on medical policies and procedures and that such failure to train was the "driving force behind a constitutional violation by a specific municipal employee." Doc. 155, at 41; *Crowson v. Washington County*, 983 F.3d 1166, 1186 (10th Cir. 2020). To proceed on such a theory without showing a pattern of prior violations, Plaintiffs must show: "(1) the existence of a municipal policy or custom involving deficient training; (2) an injury caused by the policy that is obvious and closely related; and (3) that the municipality adopted the policy or custom with deliberate indifference to the injury." *Valdez v. Macdonald*, 66 F.4th 796, 816-17 (10th Cir. 2023) (internal quotation marks omitted).

### A. The Court has already found the first and third elements.

This Court has already concluded that Plaintiffs presented sufficient evidence to create genuine disputes of material fact regarding the first and

third elements. For the finding that there existed a municipal policy or custom involving deficient training, s*ee* Doc. 187, at 22-29 (Report and Recommendation) ("[I]n relation to training, multiple Jail employees testified that they received no meaningful medical training."); Doc. 200, at 28-29 (Order adopting in part Report and Recommendation). For the finding that the municipality adopted the policy or custom with deliberate indifference to the injury, *see* Doc. 187 at 29-30 ("The record reflects that the Sheriff, through the de facto Jail Administrator (Undersheriff [David] Crabtree), had actual knowledge of numerous and systemic problems with the Jail's healthcare system… A sheriff's 'continuous neglect' of medical conditions similar to those in this case could lead a reasonable fact finder to infer causation of a plaintiff's injury sufficient to defeat summary judgment." (citation omitted)).

**B. The injury is "obviously and closely related."**

Next, Plaintiffs must show that Mr. May's injury was "obviously and closely related" to the failure to train. *Valdez*, 66 F.4th at 816-17. "This requirement is satisfied if the plaintiff shows that the municipality was the moving force behind the injury alleged," that is, that there is "a direct causal link between the municipal action and the deprivation of federal rights." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir.

2013) (internal quotation omitted). *See also City of Canton v. Harris*, 489 U.S. 378, 391 (1989) (the relevant inquiry is "[w]ould the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?").

**1. The Court considered evidence linking Mr. May's injury to the Sheriff's failure to train Jail staff.**

A reasonable jury could find that the Sheriff's failure to train his staff on medical policies and procedures, including the jail's own hunger strike policy, was obviously and closely related to Mr. May's injury. *See Lance v. Morris*, 985 F.3d 787, 801 (10th Cir. 2021) (finding that when "employees had [] no training on when to call a nurse or a doctor when one was not onsite" it was closely related to delay in medical care for plaintiff's priapism).

> "As to training the Jail's officers, Undersheriff Crabtree was unable to give a definite date as to when training began regarding the Jail's policies, but knew it was sometime in 2022. *Id*. at 20. Lt. [Martha] Stanford testified she was 'pretty sure' she received training on the Jail's medical policies when she first started either in 2010 or 2014. Doc. 155, Ex. 20, at 5-6. **She testified training was 'very limited' in early 2022**. *Id*. at 7….
>
> "Officer [Julie] Warnke testified additional trainings on 'the jail's medical policies' began after Mr. May's death. Doc. 155, Ex. 11, at 24… **She did not recall receiving any training with respect to the Jail's medical policies before Mr. May's death.** *Id*. She had no training in wound care apart from what she had gleaned from working in nursing homes. *Id*. at 18. She was unaware that the Custer County Jail had a hunger strike policy. *Id*. at 22.

"With respect to Mr. May's missing meals, and how many missed meals might amount to a medical emergency, Officer [Michael] McCowen testified he did not 'feel that [he] had the authority to make that call.' Doc. 155, Ex. 23, at 13. He understood that he was to take Mr. May's blood pressure and monitor him through the day. *Id.* He testified he received no training with respect to wound care. *Id.* at 14. He did not know if a nurse was providing wound care to Mr. May. *Id.* And he had no training as to 'the medical significance of fluctuating blood pressure' or what to do 'if a blood pressure reading was below a certain number.' *Id.* at 15.

"Similarly, **Officer [Brayan] Alvarado testified he had no training as to what signs or symptoms might indicate an emergent condition**. Doc. 155, Ex. 21, at 15. He also did not know what 'blood pressure readings' would 'indicate an emergent medical condition.' *Id.* at 16. And he stated that it would be Turn Key and Officer Warnke's responsibility to know how to interpret the blood pressure readings as 'they're the ones supervising that.' *Id.*

"Officer McCowen testified he 'verbally expressed [his] concerns about the facility's inability to care for . . . mentally ill patients because it wasn't medically equipped to do that.' Doc. 155, Ex. 23, at 17. He relayed these concerns up the 'chain of command.' *Id.* **As to whether an inmate with mental health issues could ever just go directly to the hospital, Officer McCowen answered that he did not know as 'those were decisions that would have been made outside of [his] realm**.**'** *Id.* at 18.

"Officer Alvarado testified he verbally alerted his supervisors that he thought Mr. May should not be housed where he was. Doc. 155, Ex. 21, at 5, 14. And the staff all agreed the 'jail was not fully equipped to take care of [Mr. May.]' *Id.* He testified Mr. May spoke mostly 'gibberish,' was in his diaper 'generally,' was not eating or walking, and he believed Mr. May needed 'a medical facility' that could take care of him. *Id.* at 11-15. But he was not going to going over the heads of his supervisors, as that was 'above his pay grade.' *Id.* at 14. Officer Alvarado testified he was not trained in providing medication, but he knew to alert the on-call nurse

> or provider should an inmate refuse medication. *Id.* at 3. **He never received training as to what 'signs and symptoms' a detainee might exhibit that would be deemed emergent**. *Id.* at 15.
>
> "Officer McCowen clarified that if Mr. May had a medical emergency, he would have called EMS, not Turn Key. Doc. 142, Ex. 13, at 4-5. And Officer Alvarado testified that 'everything would be . . . funneled to [Officer] Warnke, then from Warnke to Turn Key,' but he was aware he could contact Turn Key, and EMS if needed. Doc. 142, Ex. 14, at 3, 6.
>
> "Officer Alvarado testified he knew to track what food was refused when an inmate was not eating, but he was not instructed to track weight. Doc. 155, Ex. 21, at 2. **Officer McCowen recalled no training or policy being provided as to what an officer should do when 'an inmate was observed to be not eating or drinking for a prolonged period of time.'** Doc. 155, Ex. 23, at 19. Like Undersheriff Crabtree, neither officer seemed aware of the Jail's Hunger Strike Policy. Id.; Doc. 155, Ex. 21, at 2."

Doc. 187, at 25-28 (emphasis added).

A reasonable jury could find that adequate training on the Jail's written medical policies would have enabled officers to recognize when to contact medical or mental-health personnel, appreciate the potential significance of repeated blood-pressure readings, and seek emergency assistance when Mr. May's condition required it. *See Jolliff v. Rogers Cnty. Sheriff's Dep't,* 2025 WL 1570005, at *5 (N.D. Okla. June 3, 2025) ("Because judging the severity of a medical complaint can be challenging, training and proper supervision would benefit Jail staff in triaging detainee complaints and injuries.").

### 2. The Court has already found sufficient evidence of an underlying constitutional violation by an individual officer.

As the Sheriff argues, to establish the second element, Plaintiffs "must [also] show a predicate constitutional violation committed by an individual." *Thao v. Grady Cnty. Crim. Justice Auth.*, 159 F.4th 1214, 1233 n.13 (10th Cir. 2025); Doc. 200, at 26-27.

To show an underlying constitutional violation committed by an individual officer, Plaintiffs must show that a jail employee showed "deliberate indifference" to Mr. May's "serious medical needs." *Myers v. Turn Key Health Clinics*, 2026 WL 73939, at *4 (10th Cir. Jan. 9, 2026). "Deliberate indifference contains both an objective and subjective component." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1136 (10th Cir. 2023). The objective component is satisfied if the injury is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Sheriff has conceded that the objective component of the test is met.[2] Doc. 187, at 15; Doc. 200, at 20. The subjective component requires that an official "knows of and disregards an excessive risk

---

[2] He could not do otherwise. The Tenth Circuit has held that "death is, without doubt, sufficiently serious to meet the objective component." *Burke v. Regalado*, 935 F.3d 960, 992 (10th Cir. 2019).

to inmate health or safety." *Lucas*, 58 F.4th at 1137. "An official disregards risk when he fails to take reasonable measures to abate the risk." *Id.*

A reasonable jury could conclude that at least one of the Sheriff's employees violated Mr. May's constitutional rights.

This Court has already found that a reasonable jury could conclude that Officer Julie Warnke violated Mr. May's constitutional rights. Doc. 186, at 23 ("These actions by Defendant Warnke indicate that she was aware of Mr. May's deteriorating condition. And her testimony underscores her state of mind.... She was consistently concerned that Mr. May did not belong at the jail, and instead belonged somewhere where he could receive more attentive medical care.... Based on the above, the undersigned concludes Defendant Warnke had sufficient subjective knowledge of an excessive risk of harm to Mr. May's health and safety based on the circumstantial facts surrounding Mr. May's medical condition before March 18, 2022. And that she failed to take reasonable measures to abate that risk."). This Court found that "Warnke was aware of [Mr. May's] condition and did not seek medical treatment for him" and thus "a reasonable juror could conclude that she had a subjective knowledge of an excessive risk of harm and failed to abate that harm." Doc. 200, at 17.

Thus, the Court should reject the Sheriff's contention that Plaintiffs failed to show a constitutional violation committed by an individual employee. *Id.*, at 24. A reasonable jury could find that they have.

## IV. Failure to supervise.

Plaintiffs claim that the Sheriff failed to appropriately supervise his employees. Doc. 155, at 40. To succeed on such a claim, the municipality's policymakers must have been "deliberately indifferent to the need for further… supervision." *Bryson v. City of Okla. City*, 627 F.3d 784, 789. Absent a showing of a "pattern of tortious conduct," "deliberate indifference may be found… if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction." *Id.* (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1307-08 (10th Cir. 1998)).

As discussed above, a reasonable jury could find that at least one employee of the Sheriff's department committed an underlying violation of Mr. May's constitutional rights. Section III.A.2, *supra*.

A reasonable jury could also find that the officers' violations of Mr. May's constitutional rights were a "highly predictable or plainly obvious consequence of their lack of supervision." *Bryson*, 627 F.3d at 789.

> "Lt. Stanford testified she supervised Officer Warnke, and "put her" "in charge of medical" because of her "CNA experience." Doc. 135, Ex. 31, at

5. Lt. Stanford did not know what CNA stood for, but she knew Officer Warnke had worked in nursing homes. *Id*. Lt. Stanford was unaware whether in 2022 Officer Warnke was still licensed as a CNA. *Id*….

"Undersheriff David Crabtree testified that the Sheriff's office typically ran the Jail at capacity (128 inmates) or over-capacity. Doc. 155, Ex. 14, at 11. He testified the Jail suffered from understaffing. *Id*. at 9. He testified that he was unaware that the Custer County Jail had a hunger strike policy, which it did. *Id*. at 12.4 Under the policy, the Jail Administrator was to 'evaluate the basis for the strike and seek an appropriate resolution.' Doc. 155, Ex. 41, at 1. And where 'an inmate [was] engaging in a hunger strike due to a mental condition, the appropriate medical protocols for mental illness [were to] be followed.' *Id*.; see also Doc. 155, at 30.

"Undersheriff Crabtree testified he met with Lt. Stanford and Officer Warnke, spoke to Mr. May to encourage him to drink a protein shake, and met with the ADA to encourage a 'medical[] OR' bond. Doc. 155, Ex. 14, at 13-16. Lt. Stanford and Officer Warnke kept him updated as he instructed. *Id*. at 17. He testified he did not document any other conversations he had about Mr. May with anyone else at the Jail, the County, or Turn Key before Mr. May was 'found unresponsive on March 18th.' *Id*. He did not know if Mr. May was ever seen by a mental health professional and he never spoke to Turn Key about whether it had a mental health professional who could come and see Mr. May. *Id*. at 18. So **no discussion about a referral for mental health care seems to have occurred**…

"Turn Key provided up to twelve hours of weekly LPN[3] staffing for about 150 inmates. See Doc. 155, Ex. 13, at 4 & Ex. 11, at 24. The County's contract with Turn Key neither required the employment of a licensed

---

3 "An LPN does not require an associate's or bachelor's degree." *Est. of Jensen ex rel. Jensen v. Clyde*, 989 F.3d 848, 852 (10th Cir. 2021). LPNs can "obtain[] prescriptions [for inmates], administer[] medications, [and] check[] vital signs" but cannot "prescrib[e] medications, conduct[] health assessments, [or] diagnos[e] medical conditions." *Id*.

> physician, nor an RN, nor an on-site provider. Doc. 155, Ex. 13. **This left untrained jail guards to determine when emergent medical conditions arose. And when they did, they would only verbally alert superiors**."

Doc. 187, at 22-24, 28 (emphasis added).

The Sheriff knew that the jail was not equipped to handle complex medical needs like Mr. May's. Doc. 155, Ex. 1, at 10-11 (Sheriff testified he would have expected someone in Mr. May's condition "would be taken to the hospital emergently."). Nevertheless, when Mr. May presented with such complex medical needs, neither the Sheriff nor the Undersheriff spoke to the jail's LPN or APRN, provided additional guidance to the jail staff, or sought additional care for Mr. May.[4] A "highly predictable consequence" of this failure to supervise would be a denial of adequate medical care to Mr. May.

**V. Systemic failure.**

Plaintiffs further allege a systemic failure of the jail's medical policies and procedures was a causal factor in Mr. May's death. A systemic failure claim is one where "the county's policy, or lack of policies, evinces deliberate indifference," which "may be shown by proving there are such gross deficiencies

---

4 In fact, Undersheriff Crabtree attempted to get Mr. May a medical OR bond because he knew the jail could not handle Mr. May's medical needs. Doc. 187, at 20-21.

in staffing, facilities, equipment, or procedures that the inmate is effectively denied access to medical care." *Crowson*, 983 F.3d at 1185-86. As noted above, a reasonable jury could find that an individual officer committed a constitutional violation. Section III.A.2, *supra*. However, a reasonable jury could also find that the actions of multiple officers, while not rising to the level of constitutional violations on their own, became constitutional violations in combination. This Court has already concluded that a reasonable jury could find such a systemic failure. Doc. 187, at 29; Doc. 200, at 27, 29. The remaining issue is whether the failure was causally related to Mr. May's death. A reasonable jury could find that it was.

As this Court has already discussed, a reasonable jury could find deliberate indifference on the part of Officer Warnke (Section III.A.2, *supra*; Doc. 186; Doc. 200 at 15-20); Undersheriff Crabtree (Doc. 187, at 20-21; Doc. 200, at 23-24); Turn Key itself (Doc. 190; Doc. 200, at 30-34); and Turn Key employees LPN Stacia Unruh (Doc. 184; Doc. 200, at 13-15) and APRN Tamara Carey (Doc. 183; Doc. 200, at 9-13).[5] Plaintiffs have shown that the actions of these actors, individually or in combination, rise to the level of a constitutional

---

[5] Though Turn Key, LPN Unruh, and APRN Carey are not Sheriff employees, they worked under a contract the Sheriff approved.

violation. A reasonable jury could find that the failure to provide Mr. May with any meaningful medical attention after February 14, Doc. 187, at 22-23 (LPN Unruh never checked on Mr. May again after February 14, nor did any other medical provider; there were no Jail Entry reports about Mr. May at all from February 23 to March 16); the failure to provide any mental health treatment, Doc. 187, at 24 (jail policy required hunger-striking inmates to receive "the appropriate medical protocols for mental illness"; "[N]o discussion about a referral for mental health care seems to have occurred."); the failure to provide access or referral to an on-site physician or practitioner, Doc. 187, at 28 (there was no "licensed physician, nor an RN, nor an on-site provider" at the Custer County jail); and the failure to contact emergency services prior to the day of March 18, when Mr. May was found unresponsive, evidenced a systemic failure of the Custer County Jail's medical delivery that led to Mr. May's death.

## VI. Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court deny Defendant Sheriff's motion for summary judgment. Doc. 135.

The undersigned advises the parties of their right to file an objection to this report and recommendation with the Clerk of this Court on or before October 14, 2026, in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of

Civil Procedure 72(b)(2). The undersigned further advises the parties that failure to make a timely objection to this report and recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation does not terminate the referral to the undersigned Magistrate Judge in this matter.

**ENTERED** this 30th day of September, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE